2016, 1956, and 1957. Matthew Silvera for Synopsys, Inc. Synopsys appeals two unpatentability determinations of the Board, one on anticipation grounds and the other on obviousness grounds. Now, as Apelli's brief makes clear, affirming the Board's determination on Claim 32 would stretch the law of anticipation beyond all imagination. The obviousness determination on Independent Claim 1 is also fatally flawed, and both claims require reversal, which means the claims depending from Claim 1 also require reversal. So I'm going to start with Claim 32, which recites a method for fitting an integrated circuit design within a predefined area, and there are two limitations. You have your limitation of determining optimal placement of hard blocks within the design, and hard blocks essentially have a physically defined shape. Then the second step involves selecting the location for soft blocks and hierarchical blocks to fit around the hard blocks. Now, all we had at issue here is anticipation. AtopTech actually asked to institute on obviousness as well, but the Board denied it. So that's not an appealable decision, because the Board didn't institute on obviousness in the first place. It means all we're left with is anticipation on Claim 32. As to anticipation, what the parties argued before the Board was express disclosure or inherent disclosure. And you see this in the expert report of Dr. Gyasi. You see this in the briefing. You see this in the oral hearing. Consistently it's express or inherent disclosure. And the Board found, in footnote 2 of its opinion, in appendix 27, it found there's no inherent disclosure here. So the determining optimal placement limitation is not necessarily disclosed, obviously, within the SUE reference, which is the sole anticipatory reference. So that leaves us with express disclosure. And if you look at the SUE reference, there's simply no way to find substantial evidence of determining optimal placement of hard blocks within SUE. SUE isn't even focused on hard blocks. It's all about a performance-driven soft macro clustering and placement method. And soft macros are essentially the equivalent of soft blocks within the 967 pattern. And just to be clear, based on the prior record here, it seems to me there are multiple ways to skin a cat. You could improve performance by reducing efficiency, reducing heat consumption, reducing power. You know, and placement of macros can result in improved efficiency and, in particular, reduced heat, which is part of what the problem here is about where you locate them. And you can do that by carefully addressing where to locate hard macros or, alternatively, carefully addressing where to locate soft macros, or possibly both. Correct. Is my understanding of the technology correct? That's right. And, you know, soft macro placement is the focus of SUE, and that's very clear. The only disclosure of any hard macro placement in SUE is simply to say, well, first you place your hard macros, and then let's get into the real meat of this reference, and that's all about the soft macro placement. And it's all about creating an algorithm that carefully articulates, regardless of where the hard macros are placed, almost. They're each placed into various regions, but then what this is all about is maximizing performance by then locating the soft macros according to a precise algorithm around the various hard macros in a way that will reduce heat, among other things. Exactly. That's absolutely correct, Your Honor. And so what we have here is there's just no disclosure of hard macro or hard block placement, certainly not determining optimal hard block placement in the SUE reference. But the one thing the reference does say is according to some commercial floor planning. Sure. And so what made it really confusing to me is that that clearly, to me, does not expressly disclose how the floor planning module will distribute the hard blocks. It seemed to me that I was genuinely confused by the board's determination that there was express, no, there was express, but no inherent. I kind of thought, based on the expert testimony, that if you had anything here, you had inherent. Because what the expert said is commercial floor planning, people would know, would choose some means of doing so. That seems to me that it would fit, if anywhere, in the inherent camp. Is that your understanding? I think that's if anywhere, and I don't think it even would be inherent in this case. But I do think that's if anywhere. And in fact, if you look at the expert's testimony at his deposition, the expert said, well, really, certainly this would be obvious, at least. And I think that's ultimately what we're dealing with here, is that what they're really arguing is obviousness. And that's why in Pelley's brief, they fall back on this notion of implicit disclosure, which they don't define. They focus on a skilled artisan and what a skilled artisan would do. And that's the sort of gap filling that this court has repeatedly rejected, most recently in the NIDAC case. You might want to slow down a little. I listen fast, but you talk even faster. That's rare. So I think what we have there is we really have a misplaced analysis. At best, we would have some sort of obviousness determination that could be made. But once again, the board did not institute on obviousness. What about claim one? Yes. As for claim one, the focus there is on the flattening limitation. And the flattening focuses on eliminating superfluous levels of hierarchy above said atomic blocks. Now, to understand said atomic blocks, you have to look up to the previous claim limitation, which says that you select atomic blocks at a level of the hierarchy above the bottom of the branches. And that is really the problem with the board's analysis on claim one. The board just simply did not address whether Fields or Hsu actually disclosed an elimination of a level of hierarchy above the atomic blocks, with the atomic blocks being above the bottom level. The obviousness analysis is quite strange in the first place, because essentially the board took two different references. It said, well, these are basically in the same field. And then it just sort of mixed and matched. Okay. So imagine this is a sandwich, right? You can flatten your sandwich, you know, panini style, or you can flatten it by removing ingredients. So if I take all the tomatoes out of the sandwich, it's going to flatten the sandwich, right? The sandwich is going to appear flatter. It's not going to stand up as tall, because all the tomatoes, the whole tomato layer is gone, right? That would be a form of flattening. Yeah. It feels like here the board said it's flattening because we added more tomatoes to the layer. I don't get it. I don't get it either. And I think it's beyond I don't get it, and therefore they need to explain. I think they're just wrong when you look at the reference, which is why I think reversal is appropriate on claim one in addition to claim 32. They didn't eliminate the layer. They actually broke it out and made it more. Right. They actually, right. They added more. Yes. They took R and made it R0, R1, R2. They expanded the layer. Yep. Okay. I just want to make sure I'm not missing the technology. Not at all. I mean, it's clear from the title of the reference, right? It's creating hierarchy in HDL-based, HDL-density design. So in any event, yes, you have the creation of hierarchy there. And then in the Sioux reference, which is the other one that the board relied on, there you're dealing with preserving hierarchy. And what the court didn't address as to Sioux et al is this notion of whether there was any elimination above the atomic block level with the atomic block level being above the bottom level. So once again, we just simply have references that don't teach or suggest or disclose or anything the claim limitations at issue here. In particular, the flattening limitation. Can I take you back to Claim 32 for a minute? Sure. I mean, one of the difficulties, at least for me in these kind of cases, is in this area of technology, people sometimes use different words to describe the same concepts. And I am in no position to determine whether a word in one patent means the same or the other. And so here we have the expert saying that Sioux, and the board relying on this, has things that correspond to the hard blocks and corresponds to optimal placement and pointing to the right words for that. And do you disagree with that testimony? Or do you just think even though that testimony, if you take it as true, it's just not substantial evidence? Yeah. The testimony from the expert, I mean, it just essentially says. But that's what experts are supposed to do, right? I mean, these are complicated patents. And they explain what these terms mean. And I'm not the fact finder. If the board says, well, that sounds good to me, that that's evidence, then we look at whether that's substantial evidence or not. And so it's kind of a two-step analysis. I mean, is his testimony so inherently wrong that we would find it not credible, and therefore the board here relying on it? Or even accepting it as true, it's still not substantial evidence? Right. I think it both steps, quite frankly. I think here it's so inherently incredible because he does not provide any explanation for why he thinks that this disclosure in Sioux would amount to determining optimal placement. Well, he says it's performance driven. I mean, frankly, this claim limitation optimal placement seems a little bit of a stretch to be a patentable limitation anyway. It says you have this thing, and it determines the best fit to make it work well. Why isn't performance driven making it work well, too? Right. Well, first of all, there was no claim construction of determining optimal placement. And frankly, that is the petitioner's problem because the petitioner is the one that was supposed to seek all claim construction that was necessary for its arguments. In fact, though, if you look at the specification, columns 10 and 11, there's a optimization algorithm for hard block placement. So, I mean, when you actually dig in, had there been claim construction, it's clear that there's a disclosure of optimal, and it's a specific disclosure. And it's not simply use a commercial floor planner, which is simply a tool. I think that Judge Hughes' question was a two-part question. You've done a very effective job of explaining the importance of the optimal limitation from a technological standpoint, which wasn't brief before us, but you've nonetheless, you know, obviously have quite a good mastery of that technology. But I think his question more precisely was about the expert's mention of since Sue talks about performance driven, and I thought where you were going to go, which was the argument in your brief, was about how all the references of performance driven were directed at what? Were they directed at hard block placement? No, at soft macro placement. They were only soft block, because there are lots of ways to skin a cat, right? Right. And you can increase performance in a variety of ways, and that this reference had nothing to do with performance enhancement or performance driven regarding hard block placement. That's right. It takes it right back to the title. And so the fact that the words performance driven with regard to speed might mean a reference doesn't mean it's also going to be bigger, heavier, stronger. It just means it's faster. So you have to look at what those adjectives are attached to. That's what you argued in your brief. That's right. I just want to make sure you don't miss that it was a two-part question. Yes, absolutely. And the second part of the question is perfectly answered that way. I mean, it is a matter of what performance driven is modifying. It's solely modifying the soft macro placement. Even though the expert testifies that Sue also talks about hard macros, which can be equivalent to hard blocks. Right, but hard macros, he never says it's performance driven. Thank you, Mr. Severo and Mr. Marsh. Good morning. May I please report? Will Marsh on behalf of the Top Tech Inc. This case is a substantial evidence case. And the court should affirm the board's decision because it's supported by substantial evidence. Why don't you start with flattened? Because I think that's probably your hardest point, quite frankly. Sure, so that's What the reference actually shows is the expansion of a layer and not the elimination of a layer. So how does that amount to flattening? I understand your point, Your Honor. And respectfully, I disagree. What's shown in the reference is in Figure 3, there's X0 and R0, right? And those eventually are grouped. The reference tells us that they're regrouped and divided. Which page are you on, just so we can get to the same place? Do you want to look at the reference or do you want to look at the board's opinion? Whatever you would like me to look at. Why don't we take a look at the reference? So, looking at appendix Are you in Sue or Fields? I'm in Fields right now. Appendix 1013. 1013. Yep. Okay, so on the left-hand side in the second level of the hierarchy, there's R0. On the right-hand side, there's X0.  The board credited Dr. Giasi's testimony below the expert who said that the regrouping in the way that they did eliminated a level of hierarchy. And that's really the part of the flattening limitation that Synopsis is challenging here. And if you look at figure 4, you'll see that you don't see R0 or X0. Now, their complaint is that, no, instead what you've done is you've replaced it with several different blocks. And I understand that that's your point. But respectfully, each of the sections that's shown here, R1, R2, R3, and R4, which were part of R0, those were part of R0 to begin with. We didn't create new hierarchy. Those were within that block labeled R0 before. They weren't called out in the hierarchy. Well, in fact, nothing about R0 is disclosed to have been eliminated, right? Nothing was eliminated. It's like you took a piece of meat and you cut it into four chunks, but it's still the same quantity of meat. There's nothing in this reference that suggests that any portion of the meat was removed. Correct? Again, respectfully, I disagree. What portion of the record? So what the expert said and what the board agreed with is that the superfluous level of the hierarchy, the R0 grouping of R1 through R4— That's not true. Let's turn to your brief at page 21 because, you know, I actually don't do this very often, but I think in this case I need to point it out to you. At page 21 in your brief, you have a sentence. It's about two-thirds of the way down where you say the board disagreed, noting that in fields, modules R0 and X0 were removed, while in SU, node SM1 and 2 was eliminated. And then you cite Appendix 21. If you go to Appendix 21, the board didn't actually ever make that holding. Instead, they said, you argue that R0 and X0 were removed, and in SU, S1 and S2 were eliminated. Then the board goes on and says, in fields, R0 and X0 were removed, but they never make the additional holding that you are attributing to them. So why don't you take a look and tell me what I'm missing. Right. So let's look at Appendix 21, the board's decision. What the board said is— Where did they say SU nodes SM1 and 2 were eliminated? Where does the board say that? Right. So let me start. Because of the way that the board phrased it, I need to start with fields and then get to SU. Do you see on page 21 where you say, in reply, petitioner asserts in fields, modules R0 and X0 were removed, and in SU, node SM1 and SM2 were eliminated. Do you see where the board says that? You assert that. Petitioner asserts. Do you see that language in the board opinion? Yes, I see that here. And so then down at the bottom, the board does seem to say R0 and X0 have been divided and renamed. Do you see that? Correct. And then on the next place, nowhere do they say ever that SM1 and SM2 were eliminated in SU. They never say that anywhere. And you have represented to us in the red brief that the board made that holding and noted it expressly. I think that you've made a little bit of a mistake. I think what you really have done was taken their sentence that you asserted something and attributed it to them as an actual holding. And I'm not sure I can find that. Perhaps that wasn't worded as artfully as it could have been, Your Honor. I think what happened here is, as you point out, at the bottom of page 21, the board adopted Dr. Ghiasi's testimony and said, as testified to by Dr. Ghiasi in fields, basically R0 and X0 are eliminated from figure 4, just like I said. And then as you continue on, the board talks about how, and we should have probably had appendix 22 cited there, where it says, in figure 2B of SU, the two hard macros, HM1 and HM2, are first shown at different levels and then are depicted after soft macro formation in the same layout plane where each hard macro is assigned into its corresponding region. But that has nothing to do with SM1 or SM2 being eliminated. HM1 and HM2 are hard macros. SM1 and SM2 are soft macros. I don't see how I could interpret that statement by the board the way that you represented it in the red brief, that it affects the elimination of a whole layer of soft macros. Board did not hold that. Perhaps that's a fair point, Your Honor. SM, it is true that Dr. Ghiasi testified. I'll let you move on. Thank you. It is true that Dr. Ghiasi testified that that node, SM1,2, that that was removed from figure 2B of SU in the placement. But he also testified that the node directly above HM2, that that node became a superfluous level of hierarchy that was eliminated as well. That node's not labeled, and so it's kind of hard to address that node directly. It's just kind of crazy to me to say you eliminated something when all you did was parse it up into pieces. You know, you didn't eliminate, and you're talking about flattening a layer. You have to flatten a whole layer, you know, and you have the same number of layers in SU and in fields. You just have them dispersed. Well, I think maybe it's important to understand what layers we're talking about here. So we're talking about a hierarchical representation of a schematic. And so in that sense, the way that it's described is by grouping logical ideas together, and R1 through R4 were grouped together in R0. X1 and X2 were grouped together in X0. That superfluous level of hierarchy, R0 and X0, were removed, and they disappeared. The same in SU, SM1,2. I don't understand how you can say it disappeared when there's still the same level all the way across. It's just more of the level, not less of the level. Well, Your Honor... I assure you, I have four children. If they stand in a group, there are four children. If I stand them up individually, I still have four children. That's true. But if you were drawing up a hierarchical representation and you didn't group them, let's say, as boys and girls, and you didn't group them that way in the hierarchical representation, but you had a flatter representation that just said, you know, Joey, Annie, and whoever they were, that's what's shown in Figure 4. That's a flatter representation. You've removed some hierarchical grouping that is R0 and X0. Those are categories that group together those R1 through R4 and X1 and X2. When you remove that, that's what the patent is talking about, removing the superfluous level of hierarchy above that flattened layer. But in the patent, it removes it. It doesn't replace it with anything. Your reference removes it, but then replaces it with things. So why isn't that level of hierarchy still there? Great question. So the patent does replace it eventually with what's called PRUs, but this is a claim that has a comprising transition language and it's under the broadest reasonable interpretation. And so the fact that there might be another layer added or inserted I think doesn't mean that we don't remove the X0 and R0. Those groupings, that level of hierarchy, it appears in Figure 3 but doesn't appear in Figure 4. It's gone. It's gone from the logical hierarchy. That's what Dr. Ghiasi testified to and that's what the board agreed to. Now, it may be true that reasonable minds could differ on this, that we could come to different reasonable conclusions, but under the substantial evidence standard, what we understand from this court is that as long as there's more than a scintilla of evidence that would support the board's decision, and here they cite Dr. Ghiasi and they cite the references themselves, as long as there's that kind of evidence, we have to affirm the board even if we disagree, even if there's another reasonable interpretation. So the board walked through on Claim 1... But the expert's testimony has to be a reasonable description of the prior art. I mean, we can't... He can say this discloses the things, but if it doesn't actually disclose removing a level of hierarchy... And again, I have the same problem here that I had with your friend, is this is very complicated technology and we're relying largely on experts in the board to tell us what these references say, but it certainly doesn't seem like what he's saying about this reference we're talking about getting rid of R.O. matches up with the pictures. But I'm a little worried that I'm relying too much on my, you know, kind of simplistic view of the picture, there's still three levels, so why not flattening when he said something else? So that's precisely why I get back to the standard, Your Honor. Here, in this case... But you still have to give me some reason to believe that he's correct, and I still don't, just intuitively, and I apologize if I'm just flat out wrong about this, but intuitively, it does not seem to me when you take away R.0, but at the same level in the drawing or place it with R.1, R.2, R.3, that you've taken away any level of hierarchy. You've just reformatted that hierarchy. So I might take issue with that a little bit, and reasonable minds, I think, could differ. Well, I mean, you should, but that's... Can you point to me somewhere in his testimony that explains why that's not a correct articulation of what's happening here? Yes, I can. In Appendix 1099, Dr. Gyasi testified, looking at fields, that R.0 and X.0 are eliminated from Figure 4. That was his understanding of the reference. Okay, but that's not good enough, right? That's the problem. I'm just getting started. So he then said that by selecting atomic blocks for regrouping, X.0 and R.0 are rendered a superfluous level of hierarchy above the atomic blocks that are eliminated and flattened in the process. That's his interpretation of this technical reference. He then said that based on that, one of ordinary skill in the art would have understood that in selecting atomic blocks and then regrouping those atomic blocks, the plurality of hierarchically arranged branches above the atomic blocks would be flattened and eliminated. Now, those are... But he doesn't address the addition of a new level, the R.1.2.3 level, and why that doesn't destroy the flattening effect. He doesn't expressly say that. He didn't need to do that to meet the claims. I mean, we're talking, again, about a broadest reasonable interpretation here. Okay, let me just lay it on the line, because that testimony is not getting me there. I don't see... If you have three hierarchies, you have an A level, a B level, and a C level, and you get rid... And there's one block in each, or maybe there's more in the lower blocks. It really doesn't matter. We're talking about the top level. And you take away the A block and replace it with A1, A2. Don't you still have three levels of hierarchy? So I think the problem... If you've created one level of hierarchy in a certain format, you've replaced it at the same level with more blocks. I think the problem here is that in R0 and X0, R1 through R4 is there. Everything in R1 through R4 is within R0. But that's the problem with your argument. If everything in R0 includes R1 through R4, and you're just expanding it, you're not taking away any level. You're just breaking it up. It's still there. But nothing was added. Can I just turn you back to 32 before you completely run out of time? Because I find that one even more baffling because I don't understand his testimony. I don't understand the Sioux reference. What he said just before, about the performance driven in the reference only relating to the soft modules, if that's true, then that seems to undermine the expert's testimony. Can you address that? I'm sorry, if what's true? Dr. Ghiasi's testimony about Sioux and pointing to performance driven as meeting the optimal thing, that the performance driven was all about the soft macros and not the hard macros which correspond to the hard modules. So that's not what he said. And that's not what Sioux is about exclusively. Sioux is titled, it's a performance driven soft macro clustering and placement. But it talks about using floor planning to place the hard macros as well. And what Dr. Ghiasi testified Where does it talk about placement of the hard macros being performance driven as opposed to the soft macros? Well, so I think there we have to look at anticipation through the lens of what those skilled in the art would understand when they read the term. So that's where Dr. Ghiasi comes in. That's what the case law tells us. Dr. Ghiasi comes in and says, Okay, Sioux teaches that each hard macro is assigned into its corresponding region according to a floor planning result. That's true. He says Sioux shows placement in both figures 3A and 2B and Sioux's hard macros are the patent's hard blocks. Then he says that floor planning is part of a circuit design and that floor planning process does optimize. That's what his testimony is as an expert in the field. Wouldn't that be the inherent part? Or, I mean, don't see, this is the bit of the problem with anticipation versus obviousness. I'm not saying you can't make an obviousness case here but my problem is anticipation. You have to understand that floor planning and that all commercial floor planning mechanisms because no particular one is specified in Sioux. So it could be any off the shelf commercial floor planning mechanism. So you have to understand that those would necessarily optimize hard macro placement. That's where I feel like you've moved either to obviousness or at least to maybe inherency if your expert can establish that they would always every time do that. But you don't have an explicit disclosure. That's where I'm struggling. Well, to the point about every tool, Your Honor, it does call out specifically Cadence's ensemble program for floor planning. And I'll note, and this is kind of an important point, the problem that we run into here is it's a little difficult to know what optimal is. My colleague here told you that optimal was described in an algorithm in columns 10 and 11 of the patent. That's not quite true. The hard block placement doesn't really have that algorithm. That algorithm is about placing the soft blocks around the hard blocks. What it says about hard block placement is that good hard block placement is necessary for the placement optimization step which is step 22 in figure 1. That happens later. Now, if you look in the patent and if you look to column get this right if you look to column 16 at lines 14 through 16 what you'll see is when they talk about that step 22 which again is described as the placement and routing optimization step in figure 1 it says when you do that step that you use software tools such as Silicon Ensemble or PKS. It's the same exact disclosure that we have in the reference. To the extent that they have support for this determining optimal placement in the patent, which I agree is maybe a questionable limitation we have the exact same disclosure. We disclose that exact same program. Thank you, counsel. Mr. Silvera has a little model time. Take 4 minutes if you need it. Thank you, your honor. I'll be very brief. I think Mr. Marsha's main point was the standard review of substantial evidence can reasonable minds differ and I think the issue here is that reasonable minds really can't differ. We have references that don't contain the limitations that are at issue here. For that reason I think the board's determination. I'll just briefly touch on one other thing and that's this notion of optimal placement in claim 32 and what's disclosed. Once again it all comes back to what Sue was pointing at and that's soft macro placement and that's all that's performance driven. For that reason we don't have the same disclosure in any way. Unless the court has any questions I know we've already gone over as a whole here. Thank you, counsel. We'll take that case under advisement. Thank you.